264 S.W.2d 815 (1953)
ENGLAND et al.
v.
STATE.
Supreme Court of Tennessee.
December 11, 1953.
On Petition to Rehear February 11, 1954.
*816 Harry J. Joyce, Sunbright, for plaintiffs in error.
Nat Tipton, Asst. Atty. Gen., for the State.
BURNETT, Justice.
Gleason England, Bill Davis and Charlie Davis were indicted, tried and convicted for felonious assault. The minutes of the court show that the conviction was for assault with intent to commit murder in the second degree with the punishment fixed at not more than three years confinement in the State Prison. The bill of exceptions recites that the conviction was for assault with intent to commit voluntary manslaughter. The punishment in either offense is identical, both being punishable under Section 10801 of the Code. Under the holding of this Court in Scopes v. State, 152 Tenn. 424, 430, 278 S.W. 57, the minute entry though must prevail over the recitals in the bill of exceptions.
This appeal is perfected by Gleason England and Bill Davis. Charlie Davis did not appeal.
The fight out of which the indictment and conviction arose occurred in Scott County on September 28, 1952, at a restaurant near Oneida. Prosecutor Flowers and England previous to the time of the fight had some words about money which the prosecutor claimed England owed him. This earlier disagreement passed off without blows and according to the prosecutor he went to the Glass House and ordered something to eat and was sitting at the counter showing one of the people who worked at the Glass House card tricks when the plaintiffs in error entered the restaurant. There is very substantial conflict in the evidence as to what occurred. The prosecutor, Flowers, testified that the three defendants seated themselves at a table *817 and immediately England began cursing the prosecutor. He testified that he walked toward their table to advise England that he wanted no trouble with him and when he did this, England struck him with a chair while Bill and Charlie Davis grabbed him and began cutting him. He is corroborated to some extent in this testimony by the testimony of an attendant at this place, who testifies that he saw the prosecutor backed off in a corner and one of the defendants had a grip around his neck and all of them were fighting him. This witness though did not see a knife but he does testify that the prosecutor was quite bloody at the time and apparently had been cut. The testimony also offered on behalf of the State by the doctors shows that the prosecutor was cut rather severely some six to nine times  several of the gashes were from six to eight inches long.
The plaintiffs in error have an entirely different version of the occurrence. Their story is that they were seated at the table when the prosecutor came to them and drew a knife and advanced on England threatening to cut his head off and thereupon England in an attempt to defend himself grabbed a chair and engaged in the fight. The two Davises deny any part in the fight. Each one of the plaintiffs in error deny having cut the prosecutor and likewise deny knowing that he was cut or seeing any blood upon him.
It seems to us that the testimony definitely made a case to be determined by the trial jury. There are a good many things about the testimony of the plaintiffs in error that seem rather incredible. No doubt the jury concluded that their testimony to the effect that no one of them cut the plaintiff in error was rather inconsistent with the fact that he showed up with all these cuts and stab wounds. Then too to confirm the fact that he had been cut the bloody shirt of the prosecutor was introduced and this seems to completely negative the testimony of the plaintiffs in error that they could see no blood about him when they left the place. The trial judge expressly approved the finding of the jury as to the credibility of the witnesses. As has been so often said, the jury and the trial judge see and hear these witnesses face to face and are in a far better position to determine who is correctly detailing the truth of the situation than are we who see only the record. Under such a state of facts where the trial judge and a jury have credited the witnesses and theory or factual statement of the State's witnesses as opposed to those of the defense or vice versa their finding as to credibility of these witnesses is final. Ferguson v. State, 138 Tenn. 106, 196 S.W. 140; Christian v. State, 184 Tenn. 163, 197 S.W.2d 797.
Complaint is made as to the admission of the shirt of the prosecutor. It is to be remembered that the plaintiffs in error had denied seeing him bleeding when they left the scene, it therefore appears to us that it was entirely proper for the State, in rebuttal, to introduce this shirt to show that it was so bloody that they could hardly escape seeing it.
During the selection of the jury one particular juror was examined by the Court, found qualified and then apparently peremptorily challenged by the plaintiffs in error. At a later stage in the proceedings a juror by this same name was examined by the court, found qualified and accepted by the plaintiffs in error and sat upon the jury. It is stated in the brief of the plaintiffs in error that counsel for the plaintiffs in error was not acquainted with this particular juror and was unaware of the fact that he was the same person who had been previously challenged by them and he assigns this fact as error. The fact that this juror served on the trial of this case was not made a ground of the motion for new trial. There is no suggestion that the State or the trial judge had any part in foisting this juror upon the plaintiffs in error. The record shows no exception was taken by them at the time and undoubtedly had they called the matter to the attention of the trial judge seasonably, he would have excused the juror. It seems to have been one of those innocent mistakes that sometimes occur during trials. We *818 think no error was presented. The juror upon his voir dire examination seems to have been a fair and impartial juror within the meaning of the statute, Code Section 10008. He was not challenged for cause but challenged peremptorily and we think that the authority of Mahon v. State, 127 Tenn. 535, 156 S.W. 458, is applicable to the present situation. In the Mahon case a juror fair and impartial but objectionable to the defendant sat upon the case and this Court held that the provisions of the harmless error statute, Code Section 10654, governed the situation and that no reversible error was presented. It seems to us that the analogy is clear and that no reversible error is presented.
It is next insisted that the trial court erred in declining to poll the jury upon the request of the plaintiffs in error. When the jury reported their verdict, a request that they be polled was made by counsel representing the plaintiffs in error and the trial judge in substance said to counsel, "there they stand, poll them yourself." Counsel for the plaintiffs in error apparently did not see fit to take advantage of the privilege offered him by the trial judge. The trial judge did not poll the jury nor did he have the Clerk poll the jury. It probably would have been the better practice for the trial judge to have polled the jury himself or to have had the Clerk poll them individually. We think though that when counsel was offered this opportunity that if he desired to do so that he should have polled the jury and that probably this would have inured more to the benefit of the plaintiffs in error than if the trial judge or the clerk had polled them. It seems that since counsel for the plaintiffs in error did not take advantage of this opportunity that he waived any right that he might have in the premises. There is a great deal of authority upon the question as to whether or not a jury may be polled by one other than the judge or the clerk of the court. The case of Jackson v. State, 147 Ala. 699, 41 So. 178, is cited by the State as in point here. It was held in that case that a person other than the judge or clerk might lawfully poll the jury in the presence of the trial judge. It seems to us that there is no error in this assignment.
The most serious question presented by the assignments is the claim that there was a separation of the jury that vitiated the verdict. To fully understand the situation probably it is necessary that we make a brief summary of just what happened:
The case was set for trial on a day certain as to England and Bill Davis. On that day Charlie Davis had never been arrested. The case as to the two plaintiffs in error here was called and the trial began as to them. During the progress of the selection of the jury and after six jurors had been tentatively chosen, Charles Davis accompanied by his counsel came into open court and the question of a joint trial was taken up. At the request of all of the counsel the trial court allowed a recess until after lunch. In the meantime the six jurors who had been tentatively chosen were allowed to disperse. After the noon recess it was decided to try the three plaintiffs in error jointly. Thereupon the trial court made the statement that they then start over again and select the jury. Thereupon one of the two counsel representing the plaintiffs in error made the statement that they had already five or six jurors and that they might call them. It seems from the record that this was done by counsel representing Charles Davis but counsel who represented the other two plaintiffs in error was present and interposed no objection whatsoever to this procedure. (Counsel representing the present plaintiffs was called to come in court at the time.) These six jurors previously tentatively selected were examined by counsel for Charles Davis and he challenged one of them and the remaining five were permitted to take their seats in the box. As we understand the record in challenging this one counsel for Charles Davis likewise conferred with counsel for the present plaintiffs in error. Thereafter the selection of the jury was completed and they were sworn and placed in charge *819 of sworn officers and there is no subsequent insistence that there was a dispersal.
"The ancient rule of the English law was that in all cases, civil as well as criminal, a jury once sworn and charged with a cause could not be discharged or permitted to separate before they had agreed on their verdict. During the trial, which, in primitive times, usually occupied but a single day, the jurors were kept together at the bar of the court, and, on the submission of the cause, they were placed in charge of a sworn officer, and kept without separation, or communication with other persons, and without food, drink, fire, or light, except by license of the court. They were, in fact, prisoners of the court." 34 A.L.R. 1117.
This rule as we all know, has been relaxed in many instances. The general rule now is that:
"Veniremen, before being sworn to try a criminal case, need not be kept together. Thus, in the trial of a misdemeanor, after duly convening a jury and testing their impartiality, the court may postpone impaneling them and swearing them to try the case, and permit them to separate.
"Likewise, in the trial of a felony, the general rule is that the separation of the jury before the completion or swearing of the panel is not ground for a reversal or new trial unless it is affirmatively shown that prejudice has resulted to the defendant." 34 A.L.R. 1118. Citing authorities from many States.
We have in this State though two cases over one hundred years old; Hines v. State, 27 Tenn. 597; and Wesley v. State, 30 Tenn. 502, which hold that the dispersal of a jury prior to its having been sworn constitutes reversible error for which the judgment would be reversed. These two cases are completely at variance with the holdings of all other States that we can find except Mississippi, where the question has arisen. The overwhelming weight of authority in this country is to the effect that such a dispersal prior to their having been sworn is not erroneous. In Long v. State, 132 Tenn. 649, 179 S.W. 315, this Court held that the jury might separate and disperse in a noncapital case after properly admonishing them as to their duties. In Lee v. State, 132 Tenn. 655, 179 S.W. 145, L.R.A. 1916 B, 963 (rape) this Court held that it was reversible error in a capital case and was the duty of the court to keep the jury together and was a rule of absolute law that they should be kept together and any showing that they were not would constitute reversible error.
As we indicated above the record shows that counsel for all the plaintiffs in error were present when the trial judge began the selection anew of a trial jury. It was at the suggestion of one of them to which the other entered no dissent of record that the five jurors tentatively selected therefore were called and accepted and we feel that this had the effect of the beginning anew of the selection of the jury. When the trial judge proposed to begin the selection of the jury again he clearly offered all plaintiffs in error the right then to challenge any of these six jurors. The parties or counsel representing Charles Davis did challenge one of the six and the other five were allowed to remain on the jury without protest by the present plaintiffs in error. There was no dispersal after the beginning again of the selection of this jury. We feel that clearly under such circumstances such a dispersal as was here had that there is no reversible error.
In the case of James v. State, 53 Ala. 380  a prosecution for robbery  the court said: "The defendant made no objection to the permission of the court to the nine jurors to go out of the court house, while the Sheriff should summon other persons from whom to complete the jury, either when they were permitted to disperse, or when they first came back, but proceeded to the selection of the other three jurors, and, after they were sworn, made his objection to all and each. If he had any objection to the temporary dispersion of the nine jurors he should have made it *820 known before they went out; or, at any rate, before he proceeded to the completion of the jury with the talesman."
The last insistence is that two of the officers assigned by the court to guard the jury were in the jury room a short time after the jury retired. Quite a lengthy hearing was had after conviction upon this question. The trial judge, the attorney general, the clerk and counsel were sworn and testified on this question as well as certain of the jurors. The clear substance of the testimony thus heard is to the effect that when the jury retired that the two officers went into the jury room with them and remained for not over a minute or two and then immediately came out. One of these officers testifies that the purpose of going into the jury room was to lock a door from the room which went to the outside. The only juror who was examined upon the question testifies that the officers left before the jury began deliberating. It seems to us that under these circumstances no error is shown.
We have carefully considered this very interesting case along with the authorities cited and others and are convinced that there is no reversible error therein. The result is that the judgment below must be affirmed.

ON PETITION TO REHEAR
BURNETT, Justice.
We have herein a forceful, courteous and dignified petition to rehear. As we view this petition it is directed to a misconceived idea that we held in this case that jurors need not be kept together and not allowed to separate prior to their being sworn to try the issues joined. It was not the intention of this Court to so hold and probably the misconception of our holding is due to the inapt way that we expressed the question in our opinion. It was the thought of this Court to review many of these previous cases, and some of other jurisdictions, but not to change any rule or overrule any previous cases.
In the consideration of the case we did re-examine the law upon the subject and noted that despite two of our old cases to the contrary, the weight of authority was that the jury might lawfully be permitted to separate prior to their having been sworn but we did not base our opinion on this point. It was our intention to hold and we now hold that in this particular case the offer of the trial judge to permit the selection of the jury anew which was concurred in by one of the counsel for one of the plaintiff's in error and was not objected to from other counsel for the other defendants was equivalent to the selection anew of the jury. It was on this point that we based our decision in the present case. What we said with reference to the weight of authority was by way of observation as to the change in the state of the previously existing law and was not in the slightest degree the basis of our holding but to the contrary our holding was based on the matters above mentioned, that is, that in this particular case the offer of the trial judge to permit the selection of the jury anew wherein one of the counsel accepted five of the jurors previously accepted, with no dissent from other counsel, was the equivalent of the selection anew of the jury.
The petition again deals with the question of the poll of the jury. We in the original opinion and now conclude that there was no error in the poll of the jury and as suggested in the original opinion we think another method might be better but the method as used herein was not prejudicial to the plaintiffs in error.
We have carefuly considered the petition to rehear and must overrule the same for the reasons above expressed.