STATE of Tennessee, Appellee,

v.

Larry McKAY and Michael Eugene
Sample, Appellants.

Supreme Court of Tennessee,
at Jackson.

Oct. 15, 1984.

On Petition to Rehear Nov. 19, 1984.

A.C. Wharton, Jr., Shelby County Public Defender, Edward G. Thompson, Robert W. Jones, W. Mark Ward, Asst. Public Defenders, Stanley Fink, Memphis, for appellants.

William M. Leech, Jr., Atty. Gen., Gordon W. Smith, Asst. Atty. Gen., Nashville, for appellee.

## OPINION

FONES, Justice.

Defendants, Larry McKay and Michael Eugene Sample, have appealed their convictions of murder in the perpetration of armed robbery and sentences of death. The jury found Sample guilty of three aggravating circumstances and McKay guilty of four aggravating circumstances and no mitigating circumstances as to either defendant. We affirm the convictions of murder in the first degree and the death sentences.

### I.

On August 29, 1981, at approximately 11:00 p.m. Melvin Wallace, Jr., went into the L & G Sundry Store at 1069 North Watkins in Memphis to purchase two barbecue sandwiches. When he entered, there were four men in the Sundry Store, including two clerks, Benjamin Cooke and Steve Jones, who were known to Wallace as he was a regular customer. The other two black men were the defendants, Larry McKay and Michael Eugene Sample. Wallace did not know them but positively identified them in a line-up at 2:43 p.m. on August 31, 1981, as the murderers of Cooke and Jones and Sample as the person who shot him in the thigh and back and attempted to shoot him in the head.

Wallace testified that he went to the back of the store where Cooke had gone to prepare the sandwiches. McKay was also standing in the back with a quart of 45

Beer mumbling to himself. Not wanting to get involved with a drunk, Wallace turned and directed his attention to the front of the store where Jones and defendant Sample were standing. When he thought the sandwiches would be ready, he looked around at Cooke and saw that McKay had gone behind the counter and was holding a gun at Cooke's head. When Wallace realized "it was a robbery" and "broke and ran for the front door," Sample hollered for him to halt and shot him in the thigh. Wallace tried to play dead but Sample came over and said, "This nigger ain't dead," and shot him in the back. Wallace had heard Sample demanding that Jones give him all the money and heard Jones say, "Man, I gave you everything I had." After hearing Sample say several times, "I ought to kill all you son-of-a-bitches," Wallace heard him say, "Kill every son-of-a-bitch in here," and the defendants started shooting. Wallace testified he saw McKay shoot Cooke in the head. Sample came back to where Wallace was lying on the floor and put a pistol to his head. It clicked several times and did not go off. Wallace testified that he "came up off the floor" and started wrestling with Sample. The gun went off past Wallace's head and he lapsed into unconsciousness. When Wallace woke up, he heard Sample say, "Let's get the hell out of here."

Cooke and Jones died from the bullet wounds to their heads; but when the police arrived shortly after the killers left, Wallace was able to give them information about the episode and gave a description of the killers while he was receiving medical care at the scene and at the hospital. One of the investigating officers remembered that a grocery store across the street from the L & G Sundry Store had been robbed about ten days earlier, and that the witnesses had said the robbers were two black males wearing blue-green surgical caps. Among the items taken in that robbery was a .45 caliber automatic pistol that had a tendency to misfire. Shell casings from a .45 caliber automatic were found in the Sundry Store; and putting together leads from the two robberies, the police ap-prehended Sample and McKay the next day. They were in a car with a third man, and the .45 automatic with the serial number of the pistol stolen from the grocery across the street was found on McKay. A .32 caliber revolver was found inside the car. Bullets recovered from Jones' cheek, Cooke's head and chest and Wallace's leg had been fired from the .32 caliber revolver found in the car. Two blue hospital surgical caps were found in the car. More than two hundred and perhaps as much as seven hundred dollars in cash was stolen from the Sundry Store; and McKay, who was unemployed, had $166.30 on his person when arrested. Sample had $195 in cash at that time. The third man in the vehicle testified to incriminating circumstances linking defendants to recent criminal activity.

Charles Rice, age sixteen, went to the L & G Sundry Store to buy cigarettes and as he arrived at the door he saw the robbery in progress, specifically the gun pointed at the head of one of the clerks. He turned and ran home and told his mother what he had seen and later reported the information to the police. He made a positive identification of both defendants.

## II.

Both defendants raise the issue that the evidence is insufficient to justify a rational trier of fact in finding guilt beyond a reasonable doubt. The proof that these defendants robbed the Sundry Store and gunned down the two clerks and attempted to murder Wallace, briefly summarized in Section I of this opinion, was overwhelming. We find the evidence was sufficient to convince any rational trier of fact of the guilt of McKay and Sample of the murder of Cooke and Jones in the perpetration of armed robbery beyond a reasonable doubt, fully satisfying the standard prescribed in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and T.R.A.P. 13(e).

McKay asserts that "the evidence indicated that [he] did not inflict any wounds

on the victims" and that all of the victims were shot with a .32 caliber weapon, "which was allegedly carried by appellant Sample." It is true that there is uncertainty as to who carried or fired the .45 caliber pistol and who carried or fired the .32 caliber pistol at any particular time. Wallace identified Sample as the one who shot him in the hip and back and had a pistol to his head that misfired several times. The bullets removed from his hip and back were .32 caliber but the gun with a tendancy to misfire was the .45 caliber, according to the circumstantial evidence in the case. Cooke's death resulted from a .32 caliber bullet that was removed from his head. The cause of death of Jones was also a bullet to the head but that bullet left an entry wound and an exit wound and its caliber was not positively ascertained although a .45 caliber hull was found lying beside Jones' head. Thus, there was evidence to support findings that Jones was killed with the .45 caliber pistol and Cooke with the .32 caliber pistol. But, if in fact McKay did not fire a fatal bullet he was obviously a principal, actively participating, aiding and abetting Sample. Both defendants were jointly indicted for the felony and common-law murder of Cooke and jointly indicted for the felony and common-law murder of Jones with the felony and common-law counts separate. The jury found both defendants guilty of the felony murder of Cooke and of Jones. The evidence would have sustained a verdict on the common-law counts, beyond a reasonable doubt.

The recent United States Supreme Court case of *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), provides no solice to McKay. In *Enmund* the Court held that the death penalty could not be imposed upon one who aids and abets in a felony but who does not kill, attempt to kill or intend that lethal force be employed. The defendant Enmund waited in a car while two others committed the felony and murder in the perpetration thereof. Assuming McKay did not fire either of the fatal bullets, there was evidence beyond a reasonable doubt that he attempted to kill

and employed lethal force and, of course, strong circumstantial evidence that he intended to kill. Both caliber pistols were fired numerous times in the store. There is no merit to McKay's contention.

■ We have heretofore considered and rejected all of the arguments advanced by defendants asserting that Tennessee's Death Penalty Statute is unconstitutional except one. *See State v. Austin*, 618 S.W.2d 738 (Tenn.1981). The new contention was sparked by the case of *Grigsby v. Mabry*, 569 F.Supp. 1273 (E.D.Ark.1983). Therein, social scientists convinced a federal district judge that excluding persons adamantly opposed to the death penalty from serving on the jury during the consideration of the issue of guilt or innocence violates a defendant's constitutional right to a fair and impartial trial. The short answer to that issue is that the United States Supreme Court has so far rejected similar contentions and that is the only federal court we are bound to follow. *See, e.g., Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).

A number of issues were raised involving the voir dire, failure to grant individual voir dire, *Witherspoon* questions, exposure to prejudicial publicity and other complaints about the trial judge's conduct of the voir dire. We have carefully considered all of the contentions of both defendants with respect to the voir dire and found them to be without merit.

■ Defendants sought dismissal of the indictment on the grounds that Shelby County has discriminated against women in the selection of grand jury forepersons. The reasons we gave in *State v. Coe*, 655 S.W.2d 903, 909–10 (Tenn.1983), for finding that Coe had no standing to raise a sex discrimination issue with respect to the composition of the grand jury are applicable in equal force to the contention of each defendant in this case.

■ Defendants contend that they were arrested illegally and that the evidence acquired at that time should have been suppressed. It was abundantly clear that the

information known to the officers about the suspects in the Sundry Store murders coupled with their observation of the vehicle and its occupants, provided probable cause to stop, arrest, and search defendants. *See Griffin v. State,* 604 S.W.2d 40 (Tenn.1980).

We have carefully considered defendants' complaints about the identification procedures used in the line-ups and photographic arrays and have found them to be without merit.

■ Both defendants say the trial judge erred in failing to grant their motions for a severance. No showing whatever was made that a severance was needed to achieve a fair determination of the guilt or innocence of either defendant as required by T.R.Crim.P. 14(c).

■ Both defendants contend that the trial judge's charge with respect to common-law premeditated murder impermissibly shifted the burden of proof to defendants. The trial judge charged the jury that they could presume malice from the mere fact that a killing occurred and further that the use of a deadly weapon raised a presumption of malice, without informing the jurors that these were mere permissive inferences that they could accept or reject and that the State had the burden of proving malice beyond a reasonable doubt.

In the recent case of *State v. Bolin,* 678 S.W.2d 40 (Tenn.1984), we addressed defendants' contention that the Tennessee pattern instruction given therein[1] that the use of a deadly weapon raised a presumption of malice could be interpreted by a jury as a conclusive presumption or as shifting the burden of persuasion to the defendant and was therefore unconstitutional. In this case, as in *Bolin,* we find from an examination of the jury instruction as a whole, and the context in which the presumptions were stated, that no reasonable juror would interpret the presumption as conclusive or as shifting the burden of persuasion to defendant.

■ However, if we concede the instruction to be erroneous under *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), and its federal progeny, it was harmless beyond a reasonable doubt in this case for two reasons. First, the instructions in question involved the element of malice which was an essential element in the common-law count only and the jury exonerated defendants on that count. Premeditation and malice are immaterial to the felony murder count. Second, the proof of guilt was so overwhelming and the proof of mindless, malicious viciousness displayed by the repeated threats of Sample that, "I ought to kill every son-of-a-bitch in here," McKay's silent acquiescence therein plus the joint hail of bullets that followed Sample's eventual direction, "kill every son-of-a-bitch in here," rendered the obscure shifting of the burden of proof of malice insignificant beyond a reasonable doubt.

■ Defendants assert that the trial judge erred in allowing the State to cross-examine each defendant about the circumstances of the offenses when they testified at the sentencing hearing. We readily agree that this would have been prejudicial error but for the fact that it was invited, if not necessitated, by the direct testimony of the defendants. In testifying during the sentencing phase of the trial, McKay and Sample asserted unequivocally their innocence of the robbery of the Sundry Store and the murders. We agree with the State's contention that defendants raised a non-statutory mitigating factor that the State was clearly entitled to rebut.

■ Defendants complain of the failure of the trial judge to rule, pre-trial, on the admissibility of each defendant's prior convictions for impeachment purposes under the *Morgan* rule. [*State v. Morgan,* 541 S.W.2d 385 (Tenn.1976)] Both defendants presented pre-trial motions which were overruled. The motions were renewed at trial before voir dire and again overruled but were not renewed at the close of the State's proof nor was there any offer of

---

1. The charge in *Bolin* was assault with intent to    commit murder in the first degree.

proof made. In *State v. Martin*, 642 S.W.2d 720 (Tenn.1982), we held that it was discretionary with the trial judge whether an advance ruling on the admissibility of each of a defendant's prior convictions should be made to enable defendant to make an informed decision on whether to testify and, further, that the issue was not a matter of constitutional dimension. This record shows that three of McKay's prior convictions and both of Sample's prior convictions were facially in the dishonest and false statement category and thus clearly admissible under *Morgan*. Defendants' lawyers did not need guidance from the court to make an informed decision as to the use of those convictions and we find no abuse of discretion on the part of the trial judge in denying defendants' motions.

■ Defendants assert error in the admission of evidence of the robbery of the grocery across the street from the Sundry Store about ten days prior to the robbery and murders involved in this case. It is well settled that, as an exception to the general rule, if evidence that a defendant has committed a crime separate and distinct from the one on trial is relevant to some matter actually in issue in the case on trial and if its probative value as evidence of such matter in issue is not outweighed by its prejudicial effect upon the defendant, then such evidence may be properly admitted. *Bunch v. State*, 605 S.W.2d 227 (Tenn.1980). The evidence of the other crime was relevant to the issue in this case of whether defendants were in possession of a .45 caliber automatic pistol prior to the time of the Sundry Store massacre and also to the issue of the identity of the killers. Thus, we find no error in the admission of such evidence of the other crime as directly related to those issues.

However, defendants say that if admissible for a limited purpose, the trial judge allowed testimony beyond the permissible scope and particularly testimony about "physical assaults on employees" of the grocery during the robbery. Our reading of the record discloses that one of the customers in the store and Eddie Wright,

one of the owners, testified about the same incident that occurred during the robbery. According to the customer, one of the employees was putting Kools in a sack, as ordered by the tall robber. The sack burst; and when the employee asked if he should get a bigger sack, the tall robber "punched him in the side with the handle of the gun. The dude fell to the floor because I guess he was hurt. And then they went to robbing." Wright's full description of the incident was "he took the gun out and bumped him in the side with it."

We agree that there was much unnecessary detail elicited from the witnesses who were present during the grocery store robbery that had no bearing on the two issues relevant to this trial. However, the only testimony approaching prejudicial error was the apparently rather mild blow administered to one employee one time. We find the error harmless beyond a reasonable doubt.

■ Both defendants assert that the trial judge committed prejudicial error in denying their request to sequester prospective jurors during the eight day selection process. The jurors were permitted to separate and return to their homes during the selection process, but after the selection process was completed and the jury sworn, they were sequestered until the trial and sentencing hearing were completed.

Defendants rely upon *Hines v. State*, 27 Tenn. 597 (1848) and *Wesley v. State*, 30 Tenn. 502 (1851), for the rule that in a capital case upon proof that a jury separation had occurred, absent affirmative proof by the State that no tampering had in fact taken place, defendant was entitled to a new trial. Further, that the rule applied to prospective jurors before final acceptance and administration of the oath as well as after they were sworn.

In *England v. State*, 196 Tenn. 186, 264 S.W.2d 815 (1953), this Court observed that *Hines* and *Wesley* were over one hundred years old and were contrary to the decisions in all jurisdictions that had addressed the issue except Mississippi, with respect to separation before swearing them to try the

case. At least by implication, *England* overruled *Hines* and *Wesley* in a non-capital case, although an additional ground was used to deny defendant's insistence upon a new trial because of the pre-sworn separation of jurors.

Our research discloses that the following cases support a rule that allows the trial judge to permit separation of jurors prior to the time they are sworn, and that it is not grounds for reversal or a new trial unless it can be affirmatively shown that prejudice resulted from the separation. *State v. Shaw*, 636 S.W.2d 667 (Mo.1982), *cert. denied*, 459 U.S. 928, 103 S.Ct. 239, 74 L.Ed.2d 188 (1982); *State v. Williams*, 515 S.W.2d 463 (Mo.1974); *People v. Thomas*, 120 Ill.App.2d 219, 256 N.E.2d 870 (1969), *cert. denied*, 402 U.S. 996, 91 S.Ct. 2178, 29 L.Ed.2d 161 (1969); *White v. Maxwell*, 174 Ohio St. 186, 187 N.E.2d 878 (1963), *cert. denied*, 375 U.S. 880, 84 S.Ct. 151, 11 L.Ed.2d 112 (1963); *O'Quinn v. State*, 280 P.2d 759 (Okla.Crim.App.1955). The only decision to the contrary that we have found is *Metts v. Commonwealth*, 361 S.W.2d 653 (Ky.1962). The State's brief and the annotator in 72 A.L.R.3d 100 say that *State v. Fowler*, 213 Tenn. 239, 373 S.W.2d 460 (1963), appears to take the position that in a non-felony capital case the trial judge is without authority to allow jurors to separate, continuing to adhere to *Hines* and *Wesley*. As we read *Fowler*, the court distinguished the earlier cases on the facts, but be that as it may, we do not think the rule of *Hines* and *Wesley* should be retained.

T.C.A. § 40–18–116 prohibits the separation of jurors in a case in which a death sentence may be rendered, but is silent with respect to the issue of whether that prohibition must be applied before the selection process has been completed and the jury sworn. T.C.A. § 40–18–106 prohibits the swearing of any of the jurors, "until the whole number are selected."

Until the jury panel has been sworn to try a case, the court may, for any good cause, discharge a juror who has been tentatively selected and proceed with selection of another juror in his or her place. *See, e.g., Hines v. State, supra.* Thus, both the State and the defendant have the opportunity to affirmatively show that a tentatively selected juror has been tampered with or that some prejudice has resulted from a separation prior to swearing and sequestration. Therefore, we think that the trial judge should have the discretion to allow the separation of tentatively selected jurors, with appropriate admonitions, until they are sworn and required to be sequestered, in both capital and non-capital felony cases. We overrule *Hines* and *Wesley* insofar as they apply the rule stated therein to prospective and tentatively selected jurors.

We have carefully considered all of the additional issues presented on appeal and the excellent briefs in support thereof, and found them to be without merit.

The convictions of McKay and Sample of murder in the first degree and the sentences of death imposed by the Criminal Court of Shelby County are affirmed. The death sentence will be carried out on the twenty-first day of January, 1985, unless stayed by appropriate authority.

COOPER, C.J., HARBISON, J., and McLEMORE, Special Justice, concur.

BROCK, J., concurs in part; dissents in part; see separate opinion.

BROCK, Justice, concurring in part; dissenting in part.

I concur in the opinion of the Court on all issues but the validity of the death penalty. See my dissent in *State v. Dicks*, Tenn., 615 S.W.2d 126, 132 (1981).

## ON PETITION TO REHEAR

FONES, Justice.

Separate but identical petitions to rehear have been filed on behalf of defendants McKay and Sample.

It is asserted that we failed to consider and rule upon the merits of their contention that their constitutional right to a fair and impartial jury was violated by the exclusion

of persons opposed to the death penalty from service during the guilt phase of the trial.

The separate, but almost identical briefs, filed on behalf of defendants failed to comply with the requirements of T.R.A.P. 27(a)(7) in the presentation of that issue. No reason whatever was articulated in support of the conclusory statement that their constitutional rights were violated, and no evidence of any kind was presented in the trial court in support of that issue. Both briefs cited *Grigsby v. Mabry, supra,* and McKay's brief attached a memorandum opinion of the Arkansas federal district judge. Apparently, counsel for defendants are laboring under the illusion that this Court should consider as evidence in this case, so-called expert opinion presented to a federal district court in Arkansas as summarized and accepted by the federal district judge—although no authority was suggested for that proposition.

*Grigsby v. Mabry, supra,* fails to convince us that the selection process employed in this case produced an unrepresentative jury that increased the risk of conviction.

Defendants also contend that our statement that the United States Supreme Court "has so far rejected similar contentions" is not accurate. They invite us "to re-examine the opinions of the United States Supreme Court" and that "such an examination will reveal that said Honorable Court has never ruled upon the merits of this issue."

In our opinion heretofore released, we cited *Witherspoon v. Illinois, supra,* in support of the statement that that court had rejected similar contentions.

We have reread *Witherspoon* and we continue to be of the opinion that the United States Supreme Court rejected a similar contention therein.

We quote from *Witherspoon*:

The petitioner contends that a State cannot confer upon a jury selected in this manner the power to determine guilt. He maintains that such a jury, unlike one chosen at random from a cross-section of the community, must necessarily be biased in favor of conviction, for the kind of juror who would be unperturbed by the prospect of sending a man to his death, he contends, is the kind of juror who would too readily ignore the presumption of the defendant's innocence, accept the prosecution's version of the facts, and return a verdict of guilt. To support this view, the petitioner refers to what he describes as "competent scientific evidence that death-qualified jurors are partial to the prosecution on the issue of guilt or innocence."

The data adduced by the petitioner, however, are too tentative and fragmentary to establish that jurors not opposed to the death penalty tend to favor the prosecution in the determination of guilt. We simply cannot conclude, either on the basis of the record now before us or as a matter of judicial notice, that the exclusion of jurors opposed to capital punishment results in an unrepresentative jury on the issue of guilt or substantially increases the risk of conviction. In light of the presently available information, we are not prepared to announce a *per se* constitutional rule requiring the reversal of every conviction returned by a jury selected as this one was.

391 U.S. at 516–518, 88 S.Ct. at 1774–1775.

Footnote ten describes the so-called scientific evidence as two surveys—one involving 187 college students, W.C. Wilson, Belief in Capital Punishment and Jury Performance (Unpublished Manuscript, University of Texas, 1964), and the other involving 200 college students, F.J. Goldberg, Attitude Toward Capital Punishment and Behavior as a Juror in Simulated Capital Cases (Unpublished Manuscript, Morehouse College, undated). The Supreme Court continues in that footnote to describe another study that defendant included in his petition for certiorari.

Our further examination of opinions of the United States Supreme Court reveals that this issue has not been discussed in any other case. except *Bumper v. North*

*Carolina,* 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968), released the same date as *Witherspoon.*

In *Bumper* the Court said that the evidence "to support the claim that a jury selected as this one was is necessarily 'prosecution prone,' and the materials referred to in his brief are no more substantial than those brought to our attention in *Witherspoon.* Accordingly, we decline to reverse the judgment of conviction upon this basis." 391 U.S. at 545, 88 S.Ct. at 1790.

Counsel for defendants have a different concept of what constitutes a ruling upon the merits of an issue than that of this Court.

The petitions of defendants to rehear are denied.

COOPER, C.J., BROCK and HARBISON, JJ., and McLEMORE, Special Justice, concur.