# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### June 22, 2011 Session

## STATE OF TENNESSEE v. RICKY DEAN HARVEY

**Direct Appeal from the Circuit Court for Van Buren County**
**No. 2022-F      Larry B. Stanley, Judge**

---

**No. M2010-01533-CCA-R3-CD - Filed June 22, 2012**

---

A Van Buren County jury convicted Defendant, Ricky Dean Harvey, of possession of 0.5 grams or more of cocaine with intent to deliver and possession of drug paraphernalia. The jury was unable to reach a unanimous verdict on a related charge of driving under the influence of an intoxicant (DUI), and the trial court declared a mistrial as to that count. A fourth count of the indictment was resolved in a bench trial wherein the trial court found Defendant violated the implied consent law. The DUI charge was ultimately dismissed. The trial court sentenced Defendant to serve eleven years for the cocaine conviction, concurrent with the sentence of eleven months and twenty-nine days for the drug paraphernalia conviction. In his appeal, Defendant presents the following issues for review: (1) the evidence was insufficient to sustain his conviction for possession of 0.5 grams or more of cocaine with intent to deliver; (2) the stop and search of Defendant's vehicle and the resulting arrest of Defendant violated Defendant's constitutional rights and the trial court erred by denying Defendant's motion to suppress; (3) the sentence imposed by the trial court is excessive; and (4) Defendant "[l]acked the [m]ental [c]apacity for the [a]rrest and [t]rial [h]eld in this [m]atter." After a thorough review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, PJ., and CAMILLE R. MCMULLEN, J., joined.

Jennifer Austin Mitchell, Dunlap, Tennessee, for the appellant, Ricky Dean Harvey.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Lisa Zavogiannis, District Attorney General; Darrell Julian, Assistant District Attorney General; and Mark Tribble, Assistant District Attorney General, for the appellee, the State of Tennessee.

OPINION

## I. Background

*Suppression Hearing*

In his original motion to suppress evidence, Defendant asserts that the following items seized from his vehicle following a stop and subsequent search were obtained in violation of his rights under the Fourth Amendment to the United States Constitution and Article I section 7 of the Constitution of Tennessee: cocaine powder, rock cocaine, spoons, needles, a syringe, a hollow ink pen, and a metal pipe with brillo. The specific and limited grounds in support of the suppression motion are alleged in the written motion as: (1) it was a warrantless search in the absence of exigent circumstances; (2) Defendant's vehicle was illegally stopped because the officer "had no reasonable suspicion or probable cause that the Defendant was operating his motor vehicle in violation of any law;" and (3) the officer had no probable cause to arrest Defendant after the stop and therefore there was no justification for the "inventory" of Defendant's vehicle. Defendant asserts in his motion that Defendant was not arrested for DUI until after a drug sniffing dog alerted to the vehicle and therefore "the DUI arrest was [a] subterfuge to gain access to Defendant's vehicle." There was no specific allegation of an improper search of the vehicle in the event there were appropriate grounds to stop the vehicle and subsequently arrest Defendant.

The proof at the suppression hearing consisted of testimony by the officer who stopped Defendant, and an audio visual tape recording made by the officer's patrol car camera. Testimony was limited to the precise grounds raised by Defendant in his written motion.

Tennessee Highway Patrol Trooper Kevin Ballew was on duty in the late afternoon driving southbound on Highway 111 in Spencer when he simultaneously received a dispatched broadcast of a suspected reckless driver operating a van northbound on Highway 111, and saw Defendant's van which fit that description approach him from the northbound direction. Trooper Ballew observed Defendant's van weave across the northbound emergency lane, come back into the proper northbound lane, and then drift back into the emergency lane and up the shoulder of the road. Trooper Ballew turned his patrol vehicle around at the first safe place and turned on his blue lights and recording equipment and began pursuit of Defendant. Defendant turned right onto Drake Shockley Road, at a wide enough angle to cross over into the oncoming lane of Drake Shockley Road. Defendant drove a short distance on Drake Shockley Road and then turned left into a "pull off area."

Defendant got out of his van before Trooper Ballew approached Defendant. Although Trooper Ballew did not smell an odor of alcohol on Defendant's person, he did observe the following of Defendant: "[h]e [ ] seemed to be sweating quite a bit, sweating and very sleepy acting. His shirt was pulled up out of his pants. His pants was halfway zipped down." Defendant claimed that he "was falling asleep," and he was using crutches. Trooper Ballew felt he could not ask Defendant to perform any field sobriety tests other than the "horizontal gaze nystagmus test." Trooper Ballew never testified as to the results of this test. However, Trooper Ballew did state that Defendant admitted that he had taken Xanax earlier in the day.

A Spencer Police Department officer and a Van Buren County deputy soon arrived at the scene. They had heard the same dispatch about a possible reckless driver. The deputy had a drug sniffing dog with him and took the dog around Defendant's vehicle. The dog "hit" on the vehicle. Defendant gave Trooper Ballew two or three different answers as to his destination at the time he was pulled over and stopped. Trooper Ballew added during his cross-examination by Defendant's counsel that Defendant was not actually arrested for DUI until after the drug sniffing dog had "alerted" on Defendant's vehicle. The audio visual tape corroborates the suppression hearing testimony of Trooper Ballew. We also note from the tape recording that Defendant explained his use of prescribed Xanax was because of his borderline personality disorder. Defendant also admitted that he had the pain killer Percocet inside the van, presumably prescribed as a result of the surgery he claimed to have had on his leg.

*Trial*

Trooper Ballew's testimony at trial was mostly a repeat of the facts he had given during his testimony at the suppression hearing. He did add that when he observed Defendant driving on Highway 111 Defendant was proceeding approximately twenty miles per hour below the posted speed limit of forty-five miles per hour and that he was driving this slow speed while he was weaving. Trooper Ballew also testified that Defendant appeared to be confused after being stopped and that Defendant passed out in the back of the patrol car after his arrest for DUI. The drug paraphernalia and the cocaine were found during an "inventory" of Defendant's van after he was placed under arrest. The paraphernalia, including a pipe, syringes, and spoons, were discovered "[i]n the side pocket of the passenger side door." The cocaine was found inside a container under the driver's seat. Trooper Ballew later sent the cocaine to the Tennessee Bureau of Investigation (TBI) forensic laboratory for testing.

Deputy Christopher Russell of the Van Buren County Sheriff's Department arrived on the scene shortly after Defendant had been stopped by Trooper Ballew. Deputy Russell was the "canine officer" for his agency and his dog was with him. He had heard the dispatch

to be on the lookout for Defendant's van and then heard the dispatch when Defendant was stopped. Upon arrival, Deputy Russell observed Defendant to be sweating profusely and to be somewhat incoherent, which he clarified as dazed or sleepy. He walked his dog around the van twice and the dog "alerted" on the side passenger door each time. During the inventory of Defendant's van, Deputy Russell found the drug paraphernalia consisting of syringes, measuring spoons, and what appeared to be a pipe.

Officer Roger Johnson of the Spencer Police Department arrived at the scene after Deputy Russell. Officer Johnson spoke briefly with Defendant. He testified that Defendant mumbled and that he had to ask Defendant "a couple of times" what Defendant had said. To Officer Johnson, Defendant appeared to be nervous and sweating profusely. Officer Johnson was of the opinion that Defendant was under the influence of drugs, specifically cocaine or methamphetamine. Officer Johnson also participated in the "inventory" of Defendant's van and discovered a "metal tin" under the driver's seat. The metal tin contained a white powdery substance that appeared to be methamphetamine or cocaine.

Tennessee Highway Patrol Sergeant Tony Wilson, an evidence custodian, took possession of the cocaine from the TBI forensic laboratory and locked it up in the evidence locker. He later retrieved the sealed and labeled evidence and brought it to court.

Van Buren County Sheriff's Deputy Chad Martin was called to the scene to field test the white powdery substance and the "off white" colored solid substance for the presence of cocaine. Both substances field tested positive for cocaine. He further testified that a person could get "several" $10.00 rocks of crack cocaine to sell from a total of 3.5 grams of cocaine.

Patty Choatie, a drug chemist for the TBI Crime Lab, testified that she received two packages of substance, one a white powdery substance, and the other a solid "waxy" substance. The powdery substance was 1.4 grams of cocaine powder and the solid "waxy" substance was 3.5 grams of cocaine base, also known as crack cocaine.

Defendant did not testify or present any other evidence.

## II. ANALYSIS

*Sufficiency of the Evidence*

Defendant argues that the evidence was not sufficient to sustain his conviction of possession of 0.5 or more grams of cocaine with intent to deliver. Specifically, Defendant bases his argument on his assertions that there was inconsistent testimony and that there was no proof that Defendant possessed the cocaine with the intent to deliver. As to the last

-4-

assertion, Defendant points to the existence of the drug paraphernalia as proof that he only possessed the cocaine with intent to use it himself.

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." A convicted criminal defendant who challenges the sufficiency of the evidence on appeal bears the burden of demonstrating why the evidence is insufficient to support the verdict, because a verdict of guilt destroys the presumption of innocence and imposes a presumption of guilt. *See State v. Evans*, 108 S.W.3d 231, 237 (Tenn. 2003); *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000); *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). This Court must reject a convicted criminal defendant's challenge to the sufficiency of the evidence if, after considering the evidence in a light most favorable to the prosecution, we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Hall*, 8 S.W.3d 593, 599 (Tenn. 1999).

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. *See Carruthers*, 35 S.W.3d at 558; *Hall*, 8 S.W.3d at 599. A guilty verdict by the trier of fact accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the prosecution's theory. *See State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate the evidence. *See Evans*, 108 S.W.3d at 236; *Bland*, 958 S.W.2d at 659. Nor will this Court substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact. *See Evans*, 108 S.W.3d at 236-37; *Carruthers*, 35 S.W.3d at 557. "[D]irect and circumstantial evidence should be treated the same when weighing the sufficiency of [the] evidence." *State v. Dorantes*, 331 S.W.3d 370, 381 (Tenn. 2011).

Tennessee Code Annotated section 39-17-417(a)(4) sets forth that it is a criminal offense for a person to knowingly possess a controlled substance with the intent to deliver it. It is a Class B felony if the controlled substance contains 0.5 grams or more of cocaine. Tenn. Code Ann. § 39-17-417(c)(1). "It may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing." Tenn. Code Ann. § 39-17-419. Patty Choatie, the TBI drug chemist, testified that there was 1.4 grams of powder cocaine and 3.5 grams of "waxy" rock/crack cocaine, for a total weight of 4.9 grams, well over 0.5 grams. She explained the discrepancy from the arresting officer regarding the weight of the cocaine by

testifying that officers in the field normally weigh the drug inside its bag, and she weighed the drug by itself. Any inconsistency in the number of ziplock bags found was resolved by the jury as the trier of fact. Deputy Chad Martin testified that from 3.5 grams of crack cocaine, also known as an "eight-ball," drug dealers could break off several "$10.00 rocks" of crack cocaine for sale. The evidence was sufficient to support the conviction for possession of 0.5 grams of cocaine with intent to deliver. Defendant is not entitled to relief on this issue.

*Motion to Suppress Evidence*

Defendant argues that the trial court committed reversible error by failing to suppress evidence of the cocaine and the drug paraphernalia found in his vehicle. The findings of fact made by the trial court at the hearing on a motion to suppress are binding upon this Court unless the evidence contained in the record preponderates against them. *State v. Ross*, 49 S.W.3d 833, 839 (Tenn. 2001). The trial court, as the trier of fact, is able to assess the credibility of the witnesses, determine the weight and value to be afforded the evidence and resolve any conflicts in the evidence. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). The prevailing party is entitled to the strongest legitimate view of the evidence and all reasonable inferences drawn from that evidence. *State v. Hicks*, 55 S.W.3d 515, 521 (Tenn. 2001). However, this Court is not bound by the trial court's conclusions of law. *State v. Simpson*, 968 S.W.2d 776, 779 (Tenn. 1998). The application of the law to the facts found by the trial court are questions of law that this court reviews *de novo. State v. Daniel*, 12 S.W.3d 420, 423 (Tenn. 2000).

Under both the federal and state constitutions, a warrantless search and seizure is presumed unreasonable, and the evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search and seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement. *State v. Binette*, 33 S.W.3d 215 (Tenn. 2000).

*A. Initial Stop*

"A police officer may make an investigatory stop of a motor vehicle when the officer has reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed." *State v. Watkins*, 827 S.W.2d 293, 294 (Tenn. 1992) (citing *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868 (1968)). "In determining whether a police officer's reasonable suspicion is supported by specific and articulable facts, a court must consider the totality of the circumstances." *Watkins*, 827 S.W.2d at 294 (citing *U.S. v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621, 629 (1981)). This inquiry looks to such factors as the public interest served by the seizure, the nature and scope of the

intrusion, and the objective facts on which the law enforcement officer relied in light of his experience. *See State v. Pulley*, 863 S.W.2d 29, 30-31 (Tenn. 1993). The objective facts on which an officer relies can include, but are not limited to, his or her own observations, information obtained from other officers or agencies, offenders' patterns of operation, and information from informants. *See State v. Lawson*, 929 S.W.2d 406, 408 (Tenn. Crim. App. 1996). Reasonable suspicion must be supported by something more than the officer's "inchoate and unparticularized suspicion or 'hunch.'" *State v. Day*, 263 S.W.3d 891, 902 (Tenn. 2008) (quoting *Terry*, 392 U.S. at 27, 88 S.Ct. 1868). However, "'reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause'" and "can arise from information that is less reliable than that required to show probable cause." *Id*. at 903 (quoting *State v. Pulley*, 863 S .W.2d 29, 32 (Tenn. 1993)).

In this case, Trooper Ballew simultaneously received a dispatch to be on the lookout for a reckless driver operating a van northbound on Highway 111, and he saw Defendant's van which fit the description. Trooper Ballew observed Defendant's vehicle, which was traveling approximately twenty miles per hour below the posted speed limit, weave across the northbound emergency lane, come back into the proper northbound lane, and then drift back into the emergency lane and up the shoulder of the road. After Trooper Ballew turned his patrol car around and began pursuit, Defendant turned right onto Drake Shockley Road, at a wide enough angle to cross over into the oncoming lane. Based on the totality of the circumstances, Trooper Ballew had reasonable suspicion supported by specific and articulable facts to stop Defendant's van. *See State v. Bobby Gene Walker, Jr.*, No. E2005-02200-CCA-R3-CD, 2006 WL 2061724 (Tenn. Crim. App. July 26, 2006), *no perm. app. filed,* (Reasonable suspicion where a defendant swerved within his lane, crossed dotted center line with two tires, and crossed a fog line while partially leaving the roadway); *State v. Jerome D. Manning*, No. M2001-03128-CCA-R3-CD, 2002 WL 31852860 (Tenn. Crim. App. Dec. 20, 2002) *perm. app. denied,* (Tenn. May 5, 2003)(Reasonable suspicion when defendant's vehicle crossed the center line twice and then crossed into the right shoulder). Defendant is not entitled to relief on this issue.

### B. Arrest

An officer may make a warrantless arrest "[f]or a public offense committed or a breach of the peace threatened in the officer's presence." T.C.A. § 40-7-103(a)(1). Both the Tennessee and the federal constitutions require that probable cause exist to effectuate a warrantless arrest. *State v. Bridges*, 963 S.W.2d 487, 491 (Tenn. 1997). Probable cause depends on whether the facts and circumstances and reliable information known to the officer at the time of arrest were "'sufficient to warrant a prudent [person] in believing that

the [individual] had committed or was committing an offense.'" *Bridges*, 963 S.W.2d at 491 (quoting *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964).

In this case, Defendant argues that Trooper Ballew lacked probable cause to arrest him and that the subsequent search after his arrest was improper. However, the proof shows that Trooper Ballew had sufficient reliable information to believe that Defendant was driving under the influence of an intoxicant. As previously stated, Trooper Ballew had received a dispatch concerning a reckless driver in a vehicle matching the description of Defendant's van. He then observed Defendant's van weave across the northbound emergency lane, come back into the proper northbound lane, and then drift back into the emergency lane and up the shoulder of the road. Trooper Ballew also witnessed Defendant turn right onto Drake Shockley Road, at a wide enough angle to cross over into the oncoming lane. Trooper Ballew also testified that after he pulled Defendant over, Defendant was "sweating quite a bit" and was "very sleepy acting." Defendant's shirt was pulled out of his pants, and his pants were "halfway zipped down." He told Trooper Ballew that he was falling asleep. Defendant was unable to perform field sobriety tests because he was using crutches. He also told Trooper Ballew that he had taken a Xanax earlier in the day and that he had Percocet inside his van. At trial, Trooper Ballew noted that Defendant appeared to be confused after being stopped. He provided Trooper Ballew with three different destinations when asked where he was traveling.

We conclude that the record supports a determination that Trooper Ballew had probable cause to arrest Defendant for driving under the influence of an intoxicant.

### C. Search of Defendant's Vehicle

Defendant argues that the search of his vehicle was improper. More specifically, he contends that the search was unlawful as a search incident to arrest or as an inventory search. As pointed out by the State, this precise issue was not raised in Defendant's motion for new trial. At the suppression hearing, defense counsel said:

> Mr. Harvey was stopped on March 30, 2006 and it's our contention was [sic] that the search was without a warrant and that the search of his vehicle was unlawful for two reasons. One, he was illegally stopped, the officer had no reason, suspicion, or probable cause. He was not operating his motor vehicle in violation of any law. And the search was further illegal because once he did stop him, he had no probable cause to arrest the defendant and on the video tape it clearly indicates that the stop was - - or the search was done incident to arrest for DUI but this arrest for the DUI was not done until after the K-9

alerted on the vehicle. There is a video tape and I think that would be the best way is for the Court to view the video tape.

Tenn. R. App. P. 36(a) provides: "Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." A motion to suppress evidence must be raised prior to trial. Tenn. R. Crim. P. 12 (b)(2)(C); *See also State v. Goss*, 995 S.W.2d 617, 628 (Tenn. Crim. App. 1998). Failure to raise the suppression issue before trial results in a waiver of such issue. Tenn. R. Crim. P. 12(f)(1).

Defendant did attempt to raise this issue sometime after the suppression hearing in a "Motion To Clarify Order And Motion To Reconsider Motion To Suppress." At the hearing on the motion the trial court stated:

> I am not going to go back and rehear that motion. We have already done that. It might not be a bad idea . . . It looks like the State submitted the order for my approval and did not state the specific grounds for denying it. I think the inventory based on the arrest for driving under the influence was a warranted ground that supported the search. There may have also been the ground that the officer had probable cause based on the drug dog alert. You may want to check on that. If you can find out who took that hearing that day, clarify the order. Just prepare a . . . Find a copy of the tape of the Motion To Suppress and my ruling on it. It would be about a paragraph. Just type that out for me so we can make sure that we can clarify that.

Even if this issue had not been waived, Defendant is not entitled to relief. Defendant raised this issue in his motion for new trial. In denying the motion, the trial court held:

> The main issue in the motion for a new trial comes in my opinion with the motion to suppress, the probable cause to stop and then the subsequent search of the vehicle. I agree with [Defendant's counsel] that the defendant was not in arms reach of any contraband or any weapons at the time of the arrest and there was not probable cause to search from that but I do think, based on all of the testimony in the case and I do recall a great deal of it, that the officers had reason to believe that the defendant was under the influence of some substance. I agree with you there was no testimony regarding alcohol but there was probable cause to believe, based upon what the officer saw and then later heard from the defendant, that he was likely under the influence of some substance and in association with that arrest, had a right to search the vehicle because of the pills that the defendant claimed he had taken earlier in the day

-9-

and from where he had been and where he was going that it was likely that there would be some type of substance in the car that would impair his ability to operate the motor vehicle in normal fashion without causing danger to others.

The issue with regard to the inventory search prior to towing, that is kind of an odd one. I don't think that [Defendant] - - let me back up. I don't know if he was from here or not. Was he from Van Buren County? Ms. Mitchell, do you recall?

*     *     *

I think that is very fact specific as to whether or not he could have called someone but I think my finding at the time and probably still now would be that in someone else's driveway probably would not be proper to leave the vehicle there if they needed to get in or out. He was not from here. Would have taken a while to get someone here to do that. So I think that the search as a inventory was sufficient although it might have been done after the vehicle was towed. Nonetheless, I think that the search incident to the arrest and there being probable cause to think that there were controlled substances or substances that would have impacted [Defendant's] ability to successfully navigate his vehicle and those things were likely in the vehicle gave good reason for them to search the vehicle.

The record supports the trial court's findings. Defendant in this case was lawfully arrested because Trooper Ballew had sufficient reliable information to believe that Defendant was driving under the influence of an intoxicant. Therefore, the drugs and drug paraphernalia found in Defendant's van were discovered during a lawful search incident to his arrest. Although generally a warrantless search is considered presumptively unreasonable and constitutionally impermissible, police officers may execute a warrantless search incident to a lawful arrest. *State v. Crutcher*, 989 S.W.2d 295, 300 (Tenn. 1999). Further, an officer "may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Arizona v. Gant*, 556 U.S. 332, 351, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009). In this case, Defendant was arrested for driving under the influence of an intoxicant and admitted to the officer that he had taken Xanax earlier in the day. Therefore, the officer had grounds to search for evidence of Defendant's intoxication. Defendant is not entitled to relief on this issue.

*D. Reliability of the Canine*

-10-

Defendant contends that the results of the search should have been suppressed because the reliability of the canine was not established. Again, as pointed out by the State, Defendant has waived this issue for failing to raise it in his initial motion to suppress. Defendant also failed to object to the reliability of the canine at trial. Tenn. R. App. P. 36(a) provides: "Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." A motion to suppress evidence must be raised prior to trial. Tenn. R. Crim. P. 12 (b)(2)(C); *See also State v. Goss*, 995 S.W.2d 617, 628 (Tenn. Crim. App. 1998). Failure to raise the suppression issue before trial results in a waiver of such issue. Tenn. R. Crim. P. 12(f)(1).

We note that Defendant attempted to raise this issue in a "Motion to Clarify The Order And To Reconsider The Motion To Suppress." At the hearing on the motion, defense counsel told the trial court that he had subpoenaed Deputy Russell to bring all of the records on the canine because it had come to his attention that the dog may have had some health problems. However, Deputy Russell notified counsel that he had to pick up prisoners in Georgia and did not appear at the hearing. Defendant likewise raised the issue in his motion for new trial. Concerning this issue, the trial court stated:

> The dog reliability is a little bit troublesome if Mr. Tollison raised the issue of a witness that was to be subpoenaed who had the qualifications of the dog, the certificates, the training sessions and so forth. So, I'm going to exclude that as far as my consideration of whether or not there should be a new trial. Let me take that back. I'm not going to consider the fact that there was testimony relying [sic] the dog hitting on drugs in the car because we don't have that officer's testimony. If Mr. Tollison had subpoenaed him and he was not here, although Mr. Tollison I guess if he wanted to he would likely have asked for continuance if he felt that that officer's testimony was that important.

Defendant did not present any evidence challenging the reliability of the canine at the suppression hearing or at the motion for new trial, nor did he object to the reliability of the canine during trial. Defendant is not entitled to relief on this issue.

*Competence to Stand Trial*

Defendant contends that he "lacked mental capacity both at the time of the offense in this matter and at trial." However, this issue is waived because Defendant did not sufficiently raise it prior to trial. *See* Tenn. R.App. P. 36(a); *State v. Estes*, 655 S.W.2d 179, 182 (Tenn. Crim. App. 1983). Even if not waived, based on the record before us Defendant would not be entitled to relief.

Requiring an accused to plead to an offense or stand trial while insane or mentally incompetent violates the Fourteenth Amendment to the United States Constitution and article I, section 8 of the Tennessee Constitution. *Pate v. Robinson*, 383 U.S. 375, 378, 86 S.Ct. 836, 837, 15 L.Ed.2d 815 (1966); *State v. Blackstock*, 19 S.W.3d 200, 205 (Tenn. 2000). When there is a question about a defendant's competency to stand trial, the trial court, on its own motion or upon the request of the district attorney general or defense counsel, may order the defendant's mental evaluation after a hearing. T.C.A. § 33-7-301(a)(1); *Berndt v. State*, 733 S.W.2d 119, 122 (Tenn. Crim. App. 1987). A defendant is competent to stand trial if he or she has "the capacity to understand the nature and object of the proceedings against him, to consult with counsel and to assist in preparing his defense." *Mackey v. State*, 537 S.W.2d 704, 707 (Tenn.Crim.App.1975). In determining whether a trial court should have *sua sponte* ordered a competency hearing, "an appellate court may only consider those facts which were before the court when the trial commenced or the pleas were entered." *Berndt*, 733 S.W.2d at 122. The standard of review is "'whether a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to [a defendant's] competency to stand trial'" or enter a plea of guilty. *Id.* (quoting *Williams v. Bordenkircher*, 696 F.2d 464, 467 (6th Cir. 1983)). The burden is on the defendant to prove his incompetency by a preponderance of the evidence, and the trial court's findings are conclusive on appeal unless the evidence preponderates otherwise. *State v. Oody*, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991).

In this case, prior to trial, Defendant filed a motion requesting the trial court to order a mental evaluation to determine whether he was competent to stand trial. The motion noted that Defendant "indicated to counsel that he has a total loss of a recent appearance in court. He had indicated that he cannot recall what happened in court and does not understand what is going on." The trial court granted the motion and ordered the staff at Plateau Mental Health to "assess whether the defendant: understands the nature of the legal process and the charges pending against him; whether he recognizes the consequences that can follow from the charges; and whether he is capable of assisting his counsel and participating in his own defense."

As pointed out by the State, the results of Defendant's mental evaluation were not included in the record on appeal, and it does not appear from the record that Defendant further challenged his competency to stand trial after completion of the evaluation. Defendant did not raise this issue again until his amended motion for new trial. The motion was supported solely with an affidavit from Defendant's mother stating that Defendant had a long history of mental illness for which he had received treatment on many occasions. She also stated that Defendant was "suffering from his mental health condition" at or near the time of his arrest. Defendant also points out in his brief that he told Trooper Ballew, at the time of the stop, that he was "going to a mental health appointment." We note that Trooper

Ballew testified that Defendant also told him that he was going to a doctor's appointment in Atlanta, Georgia to have surgery on his leg. The record does not contain any further evidence of Defendant's mental condition. At the hearing on Defendant's motion for new trial, the court said:

> The defendant's mental condition, as I recall, was not seriously questioned at the time other than his demeanor during the stop. I don't recall any medical evidence being presented that suggested the defendant was incompetent to stand trial or assist in his defense and at the time I don't know that it would lend any credence to the fact that this evidence should have been suppressed if he was disoriented or acting in an odd fashion at the time of the stop.

We agree with the trial court that Defendant has failed to present any evidence to suggest that he was incompetent to stand trial. Therefore, he has failed to demonstrate his incompetency by a preponderance of the evidence. Defendant is not entitled to relief on this issue.

*Sentencing Issues*

On appeal, the party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is improper. *See* T.C.A. § 40-35-401, Sentencing Comm'n Comments; *see also State v. Arnett*, 49 S.W.3d 250, 257 (Tenn. 2001). When a Defendant challenges the length, range, or manner of service of a sentence, it is the duty of this Court to conduct a de novo review on the record with a presumption that the determinations made by the court from which the appeal is taken are correct. T.C.A. § 40-35-401(d). This presumption of correctness, however, "'is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances.'" *State v. Carter*, 254 S.W.3d 335, 344-45 (Tenn. 2008) (quoting *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991)). "If, however, the trial court applies inappropriate mitigating and/or enhancement factors or otherwise fails to follow the Sentencing Act, the presumption of correctness fails," and our review is *de novo. Carter*, 254 S.W.3d at 345 (quoting *State v. Pierce*, 138 S.W.3d 820, 827 (Tenn. 2004); *State v. Shelton*, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992)).

In conducting a de novo review of a sentence, this Court must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the

Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in the defendant's own behalf about sentencing. T.C.A. § 40-35-210(b); *see also Carter*, 254 S.W.3d at 343; *State v. Imfeld*, 70 S.W.3d 698, 704 (Tenn. 2002).

Misdemeanor sentencing is controlled by Tennessee Code Annotated section 40-35-302, which provides, in part, that the trial court shall impose a specific sentence that is consistent with the purposes and principles of the 1989 Sentencing Reform Act. *See* T .C.A. § 40-35-302(b). A separate sentencing hearing is not required in misdemeanor sentencing, but the trial court must "allow the parties a reasonable opportunity to be heard on the question of the length of any sentence and the manner in which the sentence is to be served." T.C.A. § 40-35-302(a). A misdemeanor sentence, unlike a felony sentence, has no sentence range. *State v. Baker*, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997) *overruled on other grounds*.

The trial court is allowed greater flexibility in setting misdemeanor sentences than felony sentences. *State v. Johnson*, 15 S.W.3d 515, 518 (Tenn. Crim. App. 1999). The trial court, however, must impose a specific sentence for a misdemeanor conviction consistent with the purposes and principles of the 1989 Criminal Sentencing Reform Act. T.C.A. § 40-35-302(d); *State v. Palmer*, 902 S.W.2d 391, 394 (Tenn. 1995). The trial court should consider enhancement and mitigating factors in making its sentencing determinations; however, unlike the felony sentencing statute, which requires the trial court to place its findings on the record, the misdemeanor sentencing statute "merely requires a trial judge to consider enhancement and mitigating factors when calculating the percentage of a misdemeanor sentence to be served in confinement." *State v. Troutman*, 979 S.W.2d 271, 274 (Tenn. 1998).

*Length of Sentence*

Defendant was convicted of possession with intent to deliver more than 0.5 grams of cocaine, a Class B felony, and possession of drug paraphernalia, a Class A misdemeanor. As a Range I offender, he was subject to a sentence between eight and twelve years for the cocaine conviction. The applicable punishment for misdemeanor possession of drug paraphernalia was a sentence up to eleven months, twenty-nine days. The trial court applied the following enhancement factor: the Defendant has a previous history of criminal convictions or criminal behavior. T.C.A. § 40-35-114 (1). The trial court did not find any applicable mitigating factors. On appeal, Defendant supports his argument on the length of his sentence with only the following statement: "[Defendant] submits there was no basis for the Court to enhance his sentence." Initially, we note, as pointed out by the State, Tenn. R. App. 10(b) requires a defendant to support issues presented in their brief with argument.

Moreover, the failure to articulate reason in support of mere conclusory statements normally results in waiver. *State v. McKay*, 680 S.W.2d 447, 454 (Tenn. 1984).

In any event, the record reflects that the trial court considered the evidence presented at the trial and the sentencing hearing. The court further considered the presentence report, the principles of sentencing and the arguments as to sentencing alternatives, the nature and characteristics of the offenses, the evidence offered by the parties on enhancement and mitigating factors, and the potential for rehabilitation or treatment. The record in this case supports the trial court's finding that Defendant had a previous history of criminal convictions or behavior. The presentence report reflects that Defendant has prior convictions in Tennessee for theft, public intoxication, and driving under the influence of an intoxicant (DUI). He has convictions in Florida for driving on a suspended license and DUI, and in Georgia for possession of cocaine and heroin. Defendant has a conviction in California for vandalism.

A trial court is mandated by the Sentencing Act to "impose a sentence within the range of punishment." T.C.A. § 40-35-210(c). A trial court, however, "is no longer required to begin with a presumptive sentence subject to increase and decrease on the basis of enhancement and mitigating factors." *Carter*, 254 S.W.3d at 346. Therefore, an appellate court is "bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections-102 and -103 of the Sentencing Act." *Id*.

In *Carter*, the Tennessee Supreme Court clarified the 2005 changes in Tennessee sentencing law and stated:

> [A] trial court's weighing of various mitigating and enhancement factors has been left to the trial court's sound discretion. Since the Sentencing Act has been revised to render these factors merely advisory, that discretion has been broadened. Thus, even if a trial court recognizes and enunciates several applicable enhancement factors, it does not abuse its discretion if it does not increase the sentence beyond the minimum on the basis of those factors. Similarly, if the trial court recognizes and enunciates several applicable mitigating factors, it does not abuse its discretion if it does not reduce the sentence from the maximum on the basis of those factors. The appellate courts are therefore left with a narrower set of circumstances in which they might find that a trial court has abused its discretion in setting the length of a defendant's sentence.

*Carter*, 254 S.W.3d at 345-46.

Thus, a trial court's "fail[ure] to appropriately adjust" a sentence in light of applicable, but merely advisory, mitigating or enhancement factors, is no longer an appropriate issue for appellate review. *Id.*, 254 S.W.3d at 345 (citing *State v. Banks*, No. W2005-02213-CCA-R3-DD, 2007 WL 1966039, at *48 (Tenn. Crim. App., at Jackson, July 6, 2007) (noting that "[t]he 2005 amendment [to the Sentencing Act] deleted appellate review of the weighing of the enhancement and mitigating factors, as it rendered the enhancement and mitigating factors merely advisory, not binding, on the trial courts").

The record clearly shows that the trial court followed the statutory sentencing procedure, made findings of facts that are adequately supported in the record, and gave due consideration to the principles that are relevant to sentencing. Based on our review, we conclude that the enhancement factor considered by the trial court adequately supported the trial court's discretionary decision to impose a sentence of eleven years for possession of 0.5 or more grams of cocaine with intent to deliver and eleven months, twenty-nine days for possession of drug paraphernalia. Defendant is not entitled to relief on this issue.

*B. Denial of Probation*

Defendant argues that the trial court erred in not granting him probation. Again, as pointed out by the State, Defendant supports his argument on the manner of service with only the following statement: "Nor was there any factor of Tenn. Code Ann. § 40-35-103 proven or presented at sentencing that would justify confinement." As previously stated, Tenn. R. App. 10(b) requires a defendant to support issues presented in their brief with argument.

At the hearing on Defendant's motion for new trial, Defendant specifically argued that the trial court should have granted him probation or split confinement. On appeal, Defendant only argues that he should have been granted probation. Because he was convicted of a Class B felony, Defendant is not considered a favorable candidate for probation. *See* T.C.A. § 40-35-102(6). In any event, he is not eligible for probation because he received an eleven-year sentence. T.C.A. §§ 40-35-102(6), -303(a). Because his sentence is in excess of ten years, Defendant is also not eligible for split confinement which only applies to defendants receiving probation. *See* T.C.A. § 40-35-303(a), -306(a); *State v. Charles Steve Miller*, No. 03C01-9606-CR-00241, 1997 WL 585749, at *4 (Tenn. Crim. App. Sept. 23, 1997) *no. perm. app. filed*. Defendant is not entitled to relief on this issue.

**CONCLUSION**

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE